Bonnie J. BISSELL, and Linda Kay Bissell, by their Guardian, Mildred Durbin, and Mildred Durbin, Plaintiffs,

v.

Edmond J. McELLIGOTT, as Substitute Administrator of the Estate of Leon Tompkins, deceased, and United States of America, Defendants.

Sylvia Lynn GAMPHER and Steven Glen Gampher, by and through their duly appointed next friend, Loyd Gampher, and Loyd Gampher, Plaintiffs,

v.

Edmond J. McELLIGOTT, Administrator of the Estate of Leon Tompkins, Deceased, and United States of America, Defendants.

Nos. 14788-1, 14796-1.

United States District Court
W. D. Missouri, W. D.
Dec. 21, 1965.

Alan B. Slayton, Independence, Mo., Tom B. Kretsinger, Kansas City, Mo., for plaintiffs.

Richard A. Rubins, Kansas City, Mo., for McElligott. F. Russell Millin, U. S. Atty., Kansas City, Mo., John L. Kapnistos, Asst. U. S. Atty., for defendants.

JOHN W. OLIVER, District Judge.

These consolidated cases pend on defendant United States' motion for summary judgment. Pursuant to the stipulation of the parties, we are also required to rule the separated issue of scope of employment.

Difficulties during pre-trial proceedings required that this case be set for hearing. The day before the hearing, however, the parties were able to enter into the stipulation that was the subject of much pre-trial discussion. That stipulation provided that "the specific issue of scope of employment [may be decided by the Court] at this time on the basis of the exhibits, documents, affidavits, Air Force records pertaining to Leon Tompkins, and authorities to be submitted in defendant's motion for summary judgment, and plaintiffs' briefs and documents and/or exhibits, and further identified by Exhibit Nos. 1 through 12 as Defendants' Exhibits and 1 through 5 as Plaintiffs' Exhibits."

It was further stipulated "that the Court may proceed in this determination pursuant to the provisions of Rule 42(b) of the Federal Rules of Civil Procedure." We proceed to do so.

The following three paragraphs quoted from the stipulation set forth the detailed factual situation:

These causes of action arise from an automobile accident between the plaintiffs and Leon Tompkins that took place on June 23, 1963 at about 6:15 p. m. in Jackson County, Missouri, on U.S. 40 Highway, approximately one-half mile east of the intersection of U.S. 40 Highway and Noland Road, Kansas City, Jackson County, Missouri. Leon Tompkins was a Government employee, a member of the United States Air Force, driving his personally owned 1958 Oldsmobile Sedan, which he was authorized to use at his election, in an easterly direction on 40 Highway, and the other driver, Eugene E. Bissell, was driving a 1954 Buick in a westerly direction on 40 Highway. Both cars came into contact with each other in a headon collision resulting in the death of Leon Tompkins, Eugene Bissell, Maxine Gampher, and Susan Gampher, and injuries to Steven Gampher, Linda Kay Bissell, and Sylvia Gampher. Leon Tompkins was alone in his automobile, and all of the other above-mentioned parties were passengers in the vehicle being driven by Eugene Bissell.

It is further stipulated and agreed that Leon Tompkins was permanently assigned to duty at the Chanute Air Force Base, Rantoul, Illinois, and by special TDY order No. T–1562, issued by the Headquarters

Chanute Technical Training Center, 14 May, 1963, Tompkins was to proceed to the Sheppard Air Force Base, Texas, on or about May 19, 1963, for a period of temporary duty, including travel time of 36 days. Tompkins was to report no later than 0800 hours 21 May 1963 at the Sheppard Air Force Base, Texas. He had four days authorized travel time. Tompkins departed Chanute Air Force Base on 17 May 1963, he reported to the Sheppard Air Force Base at 0920 hours on 21 May 1963, he completed his training course at Sheppard Air Force Base, Texas on 21 June 1963, and signed out from that Base on June 22, 1963. He left Sheppard Air Force Base at 1530 hours; or 3:30 p. m., on June 22, 1963, and traveled to Topeka, Kansas, and arrived at Topeka, Kansas, at about 3:00 a. m. June 23, 1963. He spent about 12 hours in Topeka, Kansas where he lodged and dined with his wife and then left Topeka, Kansas at about 3:00 p. m. on June 23, 1963, and drove to Kansas City, Missouri, where he visted his mother-in-law, Dorothy Johnson, 2402 Tracy Street, in Kansas City. He arrived at Mrs. Johnson's home at about 4:00 p. m. June 23, 1963 and departed approximately 1½ hours later. He was subsequently involved in the automobile accident with Eugene Bissell at about 6:15 p. m. on June 23, 1963, on Highway 40 in Jackson County, Missouri.

It is further stipulated and agreed that travel orders, as set out in defendants' Exhibit No. 1, are true and correct. Tompkins received an advance of travel allowances, $84.00 in cash on May 16, 1963, figured at the rate of five cents a mile for 1,680 miles, designated as "monetary ALWS (allowances) in lieu of TRANSP to Sheppard AFB Tex and return Chanute." He further received $30 for TDY per diem at the rate of $1.00 a day on Travel Voucher or subvoucher from 22 May 1963 to 20 June 1963; said travel voucher or subvoucher executed by Leon Tompkins' June 21, 1963.

Briefs filed during the pretrial proceedings and filed before the hearing indicated that none of the parties' attention was focused on the real legal question involved. One plaintiff, for example, stated in one of the pretrial briefs that "Myers v. United States, W.D.Mo.1963, 219 F.Supp. 71, affirmed 8 Cir., 331 F.2d 591, a decision by Chief Judge Becker, "is a case which is almost exactly in point on all of the major issues involved in the case at bar." Both at pre-trial and throughout the hearing we expressed our failure to understand why both sides were directing attention "to federal cases involving the law of states other than Missouri" and why there was an obvious "paucity of citation of authority by both sides as to Missouri cases" (Tr. 29).

In order that justice be done, we, at the close of the hearing, afforded counsel for both sides an opportunity to file additional briefs because it was our expressed opinion that the cases submitted in earlier briefs "do not even come close to the point actually presented for decision" (Tr. 70).

The hearing was valuable not only because it prompted the parties to enter into the stipulation; it also served the purpose of clarifying the factual contentions of the parties.

On the issue of whether Sergeant Tompkins could be said to have been on leave, as distinguished from being on travel time, the parties stated their agreement that the Court must consider that he was on the fourth day of allowed travel time and that he was not on leave (Tr. 12–17).

The hearing also reflected the absence of any dispute about the fact "that Sergeant Tompkins had complete freedom to select the sort of transportation that he was to utilize to get back from Sheppard Air Base to his permanent station at Chanute Air Force Base" (Tr. 12–13). Pages 17 to 19 of the transcript reflect the further fact that "plaintiffs concede that no specific instructions were given

Sergeant Tompkins as to how he was to drive the car or what route he was to take" (Tr. 19).

Pursuant to the leave granted at the time of the hearing, additional briefs filed by both parties have been filed and studied. We have reviewed all of the cases cited. We are of the opinion that the cases to which we made reference at the hearing (Tr. 44 to 71) require that we rule the separated issue in favor of the defendant United States and that defendant United States' motion for summary judgment be sustained.

■ The point of beginning is that this case must be ruled on the basis of Missouri law. Plaintiffs' reliance upon Chief Judge Becker's decision in Myers is misplaced. Chief Judge Becker ruled a question of Colorado law in that case.

Chief Judge Murrah in United States v. Mraz, 10th Cir. 1958, 255 F.2d 115 at 117 noted "the divergence in federal case law" and explained that such divergence was caused by the Congressional requirement that particular federal courts are required to follow controlling State authority in ruling Federal Tort Claims actions.

■ Ruling the familiar "scope of employment" question, controlled in that case by New Mexico law, Chief Judge Murrah explained that the results in particular Federal cases are different because the rationale of particular State courts rests on different theories. "There is doubtless a philosophical divergence," said Chief Judge Murrah, "in the theory that a master is not liable for the wrongful acts of his servant, unless done in respect *to the very transaction out of which the injury arose,* and the theory that a master is liable for his servant's negligent acts if done while engaged in the master's business and did not arise from some external, independent and personal motive on his part" (255 F.2d at 117).

Careful study of the Missouri cases convinces us that the rule of decision in Missouri falls within the first group of cases mentioned by Chief Judge Murrah

and that the rule of decision in Colorado, as Chief Judge Becker held in Myers, falls in the second.

It is our judgment that the rule of decision in Missouri is established by the following cases: Hilsdorf v. City of St. Louis, 45 Mo. 94 (1869); Riggs v. Higgins, (Mo.Sup.Ct. en banc 1937) 341 Mo. 1, 106 S.W.2d 1 (1937); Vert v. Metropolitan Life Ins. Co., (Mo.Sup.Ct. en banc 1938) 342 Mo. 629, 117 S.W.2d 252, 116 A.L.R. 1381; Reiling v. Missouri Ins. Co., (K.C.Ct.App.1941) 236 Mo.App. 164, 153 S.W.2d 79; Stokes v. Four-States Broadcasters, Inc., (Sup.Ct.Mo.1957) 300 S.W. 2d 426; Kickham v. Carter, (Mo.Sup.Ct. 1960) 335 S.W.2d 83; and Usrey v. Dr. Pepper Bottling Co., (Sup.Ct.App.1964) 385 S.W.2d 335.

We quoted at the hearing (Tr. 62) Judge Bland's recognition that the extent of an employer's liability had been subjected to revision by the Supreme Court of Missouri and that an employer can not, under the then new rule announced in Riggs v. Higgins, be held liable unless "the right of the employer to control the physical acts or movements of the employee *at the very moment of the occurrence,*" is established as a necessary element of plaintiff's cause of action (Reiling v. Missouri Ins. Co., 153 S.W.2d at 83).

Judge Bland also held that "the test of one's liability * * * is his right and power to direct and control his imputed agent in the performance of the *casual act or omission at the very instant of the act or neglect*" (Emphasis Judge Bland's, 153 S.W.2d at 84).

And in ruling there could be no liability under the Missouri law as revised by Riggs v. Higgins, Judge Bland held that the fact that "there was no direction to Krueger to use his automobile in connection with any of the work of the company" and "[t]he fact that he was a 'free' agent in the selection of the means he used in making his rounds shows that the company reserved no right of control over the manner in which he performed his duties."

Section 239 of the Restatement of the Law of Agency was acknowledged to be a correct statement of the Missouri law in the Reiling case. Chief Judge Parker of the Fourth Circuit in United States v. Eleazer, 4th Cir. 1949, 177 F.2d 914, recognized that Missouri is one of the states that had adopted the Restatement rule by his citation of the Reiling case. Chief Judge Parker, in denying liability in Eleazer, held that the rule of North Carolina and the rule of Missouri were the same and that both were accurately stated in the Restatement.

It is also significant that Chief Judge Parker relied upon the decision of the Eighth Circuit in Standard Oil Co. v. Parkinson, 8th Cir. 1907, 152 F. 682, which held that "[t]he test of one's liability * * * is his right and power to direct and control his imputed agent in the performance of the casual act or omission at the very instant of the act or neglect."

It is apparent that the language of the late Judge Walter H. Sanborn in Standard Oil v. Parkinson and the language of Judge Bland in Reiling is identical. Judge Bland did not cite Judge Sanborn's opinion, but Judge Sanborn cited and relied upon the early Hilsdorf case which was the early Missouri case upon which Judge Collet made his revision of the Missouri law when he wrote the majority opinion for the Supreme Court of Missouri in Riggs v. Higgins.

Plaintiffs' post-hearing brief concedes that "various Missouri decisions have indicated that the Restatement of Agency rule of *respondeat superior* § 239 and illustration 4 thereunder, are followed in this State." Plaintiffs also concede that the Reiling case held in effect that "the controlling issue was whether the employer possessed and either actually exercised or reserved the right to control the activity or physical details *at the time of the occurrence in question.*" (Emphasis ours, page 5 of plaintiffs' joint suggestions in opposition to the Government's motion for summary judgment.)

Plaintiffs add on the next page that what the Kansas City Court of Appeals held in Reiling "was substantially the ruling of the Missouri Supreme Court in Riggs v. Higgins, 341 Mo. 1, 106 S.W. 2d 1 (1937)."

In light of those concessions, we do not believe it necessary to analyze further the Missouri and other cases we discussed at the hearing. We incorporate what we there said by this reference.

At the hearing (Tr. 69) we indicated that we thought Sievers v. United States, D.C.Or.1961, 194 F.Supp. 608, was probably the closest Federal case in point. In Sievers Judge Kilkenny found that under the Oregon law "the employer is not liable for the acts of an employee unless it can be shown that the relationship of master and servant existed *at the time* the damage was done and that the employee was *then* acting within the *course of his employment*" (emphasis Judge Kilkenny's).

That quotation from the Oregon law is consistent with the rules of decision developed by the Missouri cases we have cited. Judge Kilkenny accordingly sustained the government's motion for summary judgment and we are required to take the same action. See also Judge Wyzanski's similar ruling under Massachusetts law in Tavolieri v. Allain, D.C.Mass.1963, 222 F.Supp. 756.

In ruling this case we find that we are in a not dissimilar position from that in which we found ourselves when we ruled Phelps v. Bookwalter, W.D.Mo.1962, 210 F.Supp. 801, affirmed 8 Cir., 325 F.2d 186. In that case we indicated inferentially that had we been sitting on the Missouri court that decided a particular controlling case we would not have decided as had the Supreme Court of Missouri.

At the hearing of this case (Tr. 58) we candidly stated that had we been a member of the Supreme Court of Missouri at the time Riggs v. Higgins was decided, we would have joined the dissenting judges. But, as we said at the hearing, and as we stated in Phelps v. Bookwalter, our duty requires that we determine what rules of decision have been established by the courts of Missouri and to follow that

rule; we do not have the right to change those Missouri rules of decision.

Philosophic reconciliation with the obvious divergence in the results that flow from the application of inconsistent controlling State law may be found only by giving full recognition that Congress has unquestioned power to write the Federal Tort Claims Act as it chose to write it. Power to correct what may seem to some an injustice resides in the Congress; not in the federal judiciary.

For the reasons stated we rule the separated issue in favor of the defendant United States and therefore determine that defendant United State's motion for summary judgment should be and is hereby sustained.

We turn now to what disposition should be made of the remainder of the cases that pend against Edmond J. McElligott, substitute administrator of the estate of Sergeant Tompkins. Both cases were filed originally in this Court. Neither case specifically alleged the basis on which the jurisdiction of this Court is predicated, but it is obvious that plaintiffs relied solely upon the jurisdiction conferred by the Federal Tort Claims Act, § 1346(b), Title 28, United States Code.

It appears, however, on the face of the pleadings in both cases that all parties other than the United States are residents of Jackson County, Missouri. Diversity jurisdiction is therefore lacking. Nor does any other jurisdictional ground exist.

Our determination of law on the United States' motion for summary judgment that the respective plaintiffs did not suffer "personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment,* under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law" of Missouri (§ 1346(b), Title 28, United States Code) is not an adjudication of the respective plaintiffs' rights against the administrator of Sergeant Tompkins. See and compare: Gustafson v. Peck, N.D.Iowa 1963, 216 F.Supp. 370; Perez v. United States, S.D.N.Y.1963, 218 F.Supp. 571; Adams v. Jackel, E.D.N.Y., 220 F.Supp. 764; Santoro v. United States, N.D.Ill., 229 F.Supp. 707; and Hoch v. Carter, S.D.N.Y., 242 F.Supp. 863.

Because we have no jurisdiction over the remaining claims of the parties plaintiffs and because our action in regard to the motion for summary judgment of the United States does not adjudicate those claims, such claims should be and are hereby dismissed without prejudice. This dismissal without prejudice, of course, does not rule, or purport to rule, that plaintiffs may at this time maintain actions against Sergeant Tompkins' administrator in the State court.

The United States shall promptly submit a proper judgment for entry.

It is so ordered.