**UNITED STATES of America,
Appellant,**

v.

**Betty Fuller FARMER, Appellee.**

**No. 19116.**

United States Court of Appeals
Eighth Circuit.

Aug. 14, 1968.

William Kanter, Atty., Dept. of Justice, Washington, D. C., for appellant; Edwin L. Weisl, Jr., Asst. Atty. Gen., Dept. of Justice, Washington, D. C.,

7. See footnote 4, supra.

James P. Rielly, U. S. Atty., Des Moines, Iowa, and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief.

Bruce B. Graves, of Swift, Brown, Winick & Randall, Des Moines, Iowa, for appellee; Ralph R. Randall, Des Moines, Iowa, of the same firm on the brief.

Before MATTHES and HEANEY, Circuit Judges, and REGISTER, Chief District Judge.

MATTHES, Circuit Judge.

This litigation originated as a routine suit for damages for personal injuries between two individuals. Shortly after its inception the case assumed the posture of an action against the United States under 28 U.S.C. § 1346(b), popularly referred to as the Federal Tort Claims Act.

Betty Fuller Farmer (plaintiff) sued Edward Ralph Bettin in the Polk County District Court of the State of Iowa, seeking to recover for injuries she sustained in a collision that occurred between the automobile in which she was a passenger and the automobile being operated by Bettin. At that time Bettin was a member of the Army National Guard. He had been on active duty at Fort Leonard Wood and was returning to his home in Iowa when the collision occurred. On February 14, 1966, after the suit had been filed, Bettin, represented by the United States Attorney for the Southern District of Iowa, petitioned for removal of the cause pursuant to 28 U.S.C. § 2679(d).[1] In support of the petition, the United States Attorney certified that upon the basis of the information available to him, Bettin was, at the time of the incident out of which the suit arose, "acting within the scope of his office as active duty member of the United States Army of the United States Government." Upon motion the United States was substituted as party defendant. On May 5, 1966, the Government filed a motion to remand to the state court on the ground that new and additional evidence disclosed that Bettin was outside the scope of his federal employment at the time of the collision. After a hearing the district court denied the motion to remand. Farmer v. United States, 261 F.Supp. 750 (D.Iowa 1966). Later the court ascertained the amount that plaintiff was entitled to recover and entered judgment accordingly. The Government appealed from that judgment.

The relevant facts stand undisputed. Bettin enlisted in the Army National Guard of the State of Iowa in December, 1963. He entered federal active duty training for a period of six months commencing on April 8, 1964, at Fort Leonard Wood, Missouri. Upon completion of his tour of duty an order was issued releaing him from active training, effective August 22. Pursuant to an Army regulation, the order required Bettin to return to his home station all items of clothing which had been issued to him at Fort Leonard Wood.

In obedience to the order, Bettin signed out at Fort Leonard Wood at approximately 12:00 noon on August 21. At that time he received his final pay for the period ending August 22. Included was a cash travel allowance for transportation to his home of record. At approximately 9:15 on August 21, while traveling a direct route between Fort Leonard Wood and Storm Lake, Iowa, the collision occurred. Bettin also was injured, was hospitalized and released on August 24. He

---

1. Section 2679(d) provides in pertinent part:
    "Upon a certification by the Attorney General that the defendant employee was acting within the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place wherein it is pending and the proceedings deemed a tort action brought against the United States under the provisions of this title and all references thereto."

reported to the Storm Lake Armory on that day and turned in the uniforms and personal records.

The Government stipulated that while traveling from Fort Leonard Wood to Storm Lake Private Bettin was not on military leave and that while enroute from Fort Leonard Wood to Storm Lake, Iowa, he was an employee of the United States.

Thus, in capsule form we have a case where the Government concedes that the wrongdoer was an employee of the Government at the time the negligent act occurred but denies that the employee was "acting within the scope of his office or employment * * *." In resolving the question at hand, Judge Stephenson summarized the factors indicating Private Bettin was serving the interests and business of the United States as follows:

"(1) He was returning to his home station after complying with orders to attend a six-month federal active duty training period. (2) He was authorized to travel by private conveyance. (3) He was given a travel allowance for the mileage involved. (4) He was still on active duty having been granted travel time to return home. (5) He was clearly in a travel status. (6) He was subject to military discipline until his tour of duty expired." 261 F. Supp. at 752 (1966).

The Government recognizes that the question of whether a Government employee is acting within the scope of his office or employment must be determined by the *respondeat superior* rule of the state where the negligent act occurred. See Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). Accordingly, we are required to determine whether the district court was wrong in holding that under the Iowa rule of *respondeat superior* Bettin was within the scope of his employment as a soldier while on the journey from the camp to his home.

Preliminarily, we observe that the task of the federal courts in determining the state's concept of *respondeat superior* is usually fraught with some difficulty. This is so because of a lack of state precedents covering military situations, which are unique compared to any civilian counterpart. Judge Sobeloff pin-pointed the problem as follows:

"Although Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761, requires the federal courts, in suits under the Federal Tort Claims Act, to apply the law of agency of the place of the accident to determine whether a Government employee is acting in the scope of his employment, the Act itself requires all such suits to be filed in a federal court. The result is that, while state law is to be applied, there can never be state cases exactly in point as to the factual situations involved. Thus, while in cases arising since *Williams* the courts have attempted to find light in decisions of the state courts where the accidents happened, they have also felt it necessary to look to general agency principles". Cooner v. United States, 276 F.2d 220, 223–224 (4th Cir. 1960).

See also Faix, Althea Williams Revisited "Line of Duty" Cases—Need for Reconsideration, 26 Fed.B.J. 12 (1966); Government Liability for the Torts of Military Personnel Under the Federal Tort Claims Act, 45 Minn.L.Rev. 275 (1960).

The Iowa Supreme Court has not formulated an exact definition of the phrase "acting within the scope of employment" which may be methodically applied to all cases.[2] As we view the Iowa

---

2. The absence of a precise definition of scope of employment is noted by William L. Prosser in his treatise on torts:
"This highly indefinite phrase, (scope of employment) which sometimes is varied with 'in the course of the employment,' is so devoid of meaning in itself that its very vagueness has been of value in permitting a desirable degree of flexibility in decisions. It is obviously no more than a bare formula to cover the unordered and unauthorized acts of the servant for which it is found to be expedient to charge the

cases, whether the master is vicariously liable in a given case for the acts of his servant must be reconciled in light of certain entrenched broad guidelines. In the early case of Lewis v. Schultz, 98 Iowa 341, 67 N.W. 266 (1896), the court stated:

"It is sufficient to make the master responsible if the wrongful act of the servant was committed in the business of the master, and within the scope of his employment, and this, although the servant in doing it departed from the instructions of his master. Mechem, Ag. § 734." Id. at 346–347, 67 N.W. at 267.

Lewis was followed in Seybold v. Eisle, 154 Iowa 128, 134 N.W. 578 (1912). The Seybold Court elaborated somewhat on the elements to be considered, stating:

" 'The simple test is whether they were acts within the scope of his employment—not whether they were done while prosecuting the master's business; *but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him.* By authorized is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders.' Wood on Master & Servant (1st Ed.) 585." Id. at 134, 134 N.W. at 581. (Emphasis added.)

Heintz v. Iowa Packing Co., 222 Iowa 517, 268 N.W. 607 (1936), relied upon by Judge Stephenson, recognized that "[t]he general rule as to the liability of a master for injuries done by a servant in the furtherance of the master's business, is laid down in Seybold v. Eisle, 154 Iowa 128, 134 N.W. 578, 579, Ann.Cas.1914A, 1097." Id. at 522, 268 N.W. at 611.

Applying the test enunciated in Seybold, i. e., whether the acts of the servant were done in furtherance of the master's business and were such as may fairly be said to have been authorized by him, we believe that the district court was on sound ground in holding that Private Bettin was acting within the scope of his employment. As stated above, it is conceded that he was an employee of the Government. He was not on leave. He was still on active duty. He was strictly complying with the discharge order which directed him to travel to his home of record. He had been authorized to travel in his own automobile and was given a travel allowance. He was required to report within twenty-four hours of departure from Fort Leonard Wood to the warrant officer at Storm Lake Armory and return clothing and other property issued to him at Fort Leonard Wood. He complied on the day of his discharge from the hospital.

The Government emphasizes that since Private Bettin was driving his own automobile and was not under the direct control of the Army at the very moment when the accident occurred he was not within the scope of his employment. This contention is answered by the Iowa Supreme Court in Heintz v. Iowa Packing Co., supra, where the Court stated:

"We believe the better rule is that where the employer has control over the employee, the fact that the employee uses his own automobile is wholly *immaterial if that automobile is* being used when the employee is in the course of his employment. In other words, the control of the man behind the wheel is the same as the control of the wheel, for that car will go wherever the man directs it, and the man will direct it wherever the appellant company that has control over

master with liability, as well as to exclude other acts for which it is not. It refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they

may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." W. Prosser, Torts § 69, at 472–73 (3rd ed. 1964).

him orders him to go." 268 N.W. at 616.

Neither are we pursuaded by the Government's argument that the district court's holding is in direct conflict with our decision in Bissell v. McElligott, 369 F.2d 115 (8th Cir. 1966), aff'g 248 F. Supp. 219 (W.D.Mo.1965), cert. denied, 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967). To be sure, on resembling facts, the Government prevailed in *Bissell,* but in that case the Missouri law of *respondeat superior* controlled. And the Missouri courts have made it abundantly clear that unless the wrongful acts of the servant are done in respect to the very transaction out of which the injury arose the master is not liable. That is, the master cannot be held liable unless "the right of the employer to control the physical acts or movements of the employee at the very moment of occurrence" is established as a necessary element of the cause of action. Reiling v. Missouri Ins. Co., 236 Mo.App. 164, 153 S.W.2d 79, 83 (1941); Bissell v. McElligott, 248 F.Supp. 219, 222.³ This strict concept has been adopted in a number of jurisdictions. In others, including Iowa, a more liberal rule prevails. The difference in concepts was recognized by the Tenth Circuit in United States v. Mraz, 255 F.2d 115 (1958), where Chief Judge Murrah cogently stated:

"These decisions demonstrate the divergence in federal case law, depending upon controlling state authority, and the predilections of the court. There is doubtless a philosophical divergence in the theory that a master is not liable for the wrongful acts of his servant, unless done in respect to the very transaction out of which the injury arose, and the theory that a master is liable for his servant's negligent acts if done while engaged in the master's business and did not arise from some external, independent and personal motive on his part." Id. at 117.

Analysis of federal decisions demonstrates that the results in cases involving traveling military personnel differ because of varying facts and the rationale of courts from state to state. See, e. g., Cooner v. United States, 276 F.2d 220 (4th Cir. 1960) (New York law); Hinson v. United States, 257 F.2d 178 (5th Cir. 1958) (Georgia law); United States v. Mraz, 255 F.2d 115 (10th Cir. 1958) (New Mexico law); Berrettoni v. United States, 263 F.Supp. 907 (D.Mont. 1967) (Montana law); Myers v. United States, 219 F.Supp. 71 (W.D.Mo.1963), aff'd, 331 F.2d 591 (8th Cir. 1964) (Colorado law); O'Brien v. United States, 236 F.Supp. 792 (D.Me.1964) (Maine law), holding the Government vicariously liable for the conduct of the soldier while traveling from one training camp to another or reporting for duty⁴ contra: Chapin v. United States, 258 F.2d 465 (9th Cir. 1958), cert. denied, 359 U.S. 924, 79 S.Ct. 607, 3 L.Ed.2d 627 (1959) (California law); Leonard v. United States, 235 F.2d 330 (10th Cir. 1956) (Wyoming law), remanded to district court for settlement, 352 U.S. 996, 77 S.Ct. 555, 1 L.Ed.2d 540 (1957); Kimball v. United States, 262 F.Supp. 509 (D.N.J.1967) (New Jersey law); Bissell v. McElligott, supra (Missouri law); Cobb v. United States, 247 F. Supp. 505 (N.D.Ill.1965), aff'd, Cobb v. Kumm, 367 F.2d 132 (7th Cir. 1966)

---

3. Furthermore, we detect significant distinguishing features in *Bissell,* Sergeant Thomkins, whose conduct was in issue, was returning to his permanent duty station in Illinois from a temporary assignment in Texas. Enroute, he engaged in purely personal activities. Additionally, leave time above travel time was provided in the Sergeant's orders. Here, Private Bettin was not on leave; he was traveling to his home by direct route in compliance with orders issued at Fort Leonard Wood.

4. It is noteworthy to point out that in the *Hinson* case, where the serviceman was *proceeding* to his first active duty station rather than *returning,* the Fifth Circuit, applying Georgia law, cited Heintz v. Iowa Packing Co. supra, in support of its holding that the soldier was within the scope of employment when the accident occurred. n. 10, p. 183.

**112**

(Illinois law); Kunkler v. United States, 187 F.Supp. 816 (N.D.Fla.1960), aff'd, 295 F.2d 370 (5th Cir. 1961) (Florida law).

Further discussion is unnecessary. We have not been convinced that the district court misapplied Iowa law to the facts of this case. We therefore affirm.