HELEN DOUGLAS, (PLAINTIFF), RESPONDENT, v. NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY OF NASHVILLE, TENNESSEE, A CORPORATION, AND ALBERT POLUNSKY, DEFENDANTS, NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY OF NASHVILLE, TENNESSEE, A CORPORATION, APPELLANT.—155 S. W. (2d) 267.

St. Louis Court of Appeals. Opinion filed November 4, 1941.

Motion for Rehearing Overruled November 18, 1941.

Petition for Writ of Certiorari Denied March 10, 1942.

*A. A. Alexander* and *T. J. Crowder* for appellants.

*Louis E. Miller* and *Robert R. Adams* for respondent.

BENNICK, C.—This is an action for damages for personal injuries sustained by plaintiff, Helen Douglas, when she was struck by an automobile driven by one Albert Polunsky, a soliciting and collecting agent in the employ of National Life and Accident Insurance Company of Nashville, Tennesseee.

Both Polunsky and the insurance company were joined as defendants to the action; and upon a trial in the Circuit Court of the City of St. Louis, a verdict was returned in favor of plaintiff, and against both defendants, in the sum of $7500.

Judgment was rendered in conformity with the verdict; and the appeal is by the insurance company alone, which argues, as a matter of chief insistence, that it should have had a peremptory instruction at the close of the entire case upon the theory that at the time and place of the accident, Polunsky was not subject to its rights of control over his physical movements so as to have rendered it liable to plaintiff for any negligence on Polunsky's part in connection with his use, operation, and management of the automobile.

The scene of the accident was the intersection of Lindell Boulevard and Euclid Avenue, in the City of St. Louis; the time, between seven-thirty and eight o'clock in the evening of February 8, 1939.

Plaintiff had alighted from a service car, and was in the act of crossing Lindell Boulevard from north to south in the space marked off as a cross-walk along the west side of Euclid Avenue, when she was struck by Polunsky's westbound automobile at a point near the middle of the street. While the evidence was much in dispute upon the issue of Polunsky's actionable negligence, it suffices merely to say that the verdict of the jury has resolved that question in plaintiff's favor, so that the evidence upon the question of whether Polunsky either might or might not have avoided the accident is no longer of consequence on this appeal, where the only question to be considered is that of the insurance company's liability to respond to plaintiff, depending upon whether or not there was evidence to show that Polunsky, at the time of the injury, was acting within the scope of his employment by the insurance company, and subject to its right of control over his physical movements in respect to the very transaction out of which the injury arose.

So far as this question is concerned, it appears that Polunsky had a definitely assigned debit or restricted territory, extending from Sarah Street on the east to Newstead Avenue on the west, and from

Lindell Boulevard on the south to Delmar Boulevard on the north. Within such territory it was his duty to sell policies of industrial insurance and also to make collections of the weekly premiums thereon, for which latter purpose the first three days of the week were particularly stressed. Along with the other agents of the company he was required to maintain a certain collection percentage of the premiums falling due each week within his territory; but otherwise he was permitted to run his debit as he himself saw fit, and to make collections from individual policyholders at any time within the period of grace allowed for premium payments.

Each morning at eight o'clock he was required to report at the company's office in the Roosevelt Hotel at Euclid Avenue and Delmar Boulevard, but from then on his time was his own until the following morning at eight o'clock, when he would again report and account for, or turn in, his collections for the previous day. This meant that he would retain possession of, or be responsive for, each day's collections over night; and to this end he usually took the money with him to his home upon quitting his territory for the day, unless the collections had been particularly heavy, in which event he would sometimes deposit the money in a bank and then remit by his personal check the following morning, or else purchase a money order for the amount of his remittance, which he would turn in to the company at the time for his next report.

It happened that Polunsky had an automobile which he used in connection with his work whenever he saw fit to do so. He was the sole owner of the automobile; and while his superintendent knew that he had the car and used it in his work, the company did not require him to use it; did not make its possession a condition of his employment; and neither paid any part of the expense of its operation, nor made him any allowance to compensate him for its use. There were times when he did not bring the car down to the territory with him; and when he did drive it to his work, he did not always make use of it in making his collections, but frequently would park it at some convenient point and then walk over his territory, which was very compactly situated. On those occasions when he used the car, he controlled or managed it as suited his own convenience; and it was of no concern to the company how he covered his territory so long as he maintained his required collection percentage and accounted for the previous day's collections each morning at eight o'clock. In other words, his use of the car was entirely voluntary with himself, and it was left to him to select the way of covering his territory to the best advantage.

About seven-thirty o'clock in the evening of the day in question, Polunsky made his last collection for the day from a policyholder residing at 4248 Maryland Avenue, which was within his territory; and having completed his work, he drove south to Lindell Boulevard, and

then turned west on Lindell Boulevard en route to his home at 5889 Terry Avenue. This was a Wednesday, one of the days particularly set apart for the collection of premiums; and there was no dispute but that he had the day's collections with him at the time of the accident, which, it will be recalled, occurred at the intersection of Lindell Boulevard and Euclid Avenue, two blocks outside his territory, which was bounded on the west by Newstead Avenue.

Whether the insurance company is to be held liable to respond for Polunsky's negligence (as the jury found) in striking and injuring plaintiff with his automobile depends upon whether the evidence may be said to have shown that the legal relationship of master and servant existed between Polunsky and the insurance company at the time of the injury and in respect of the very transaction out of which the injury arose. [Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S. W. (2d) 252; Pesot v. Yanda, 344 Mo. 338, 126 S. W. (2d) 240; Reiling v. Missouri Ins. Co. (Mo. App.), 153 S. W. (2d) 79.]

This for the reason that in the final analysis, the responsibility of the insurance company for the acts and conduct of Polunsky turns upon the question of whether, at the moment of the occurrence for which it is sought to be held responsible, it had the right to control his physical movements, as it would have had if he were its servant in the performance of the errand upon which he was engaged at the time of the happening of the accident, but as it would not have had if his status at the time was merely that of an agent undertaking to accomplish a given result subject to the fiduciary obligation of obedience to the wishes of his principal, but with his physical movements free from any right of control on the part of the insurance company with respect to the details of the manner in which the result was to be attained. [Vert v. Metropolitan Life Ins. Co., supra; Snowwhite v. Metropolitan Life Ins. Co., 344 Mo. 705, 127 S. W. (2d) 718; Reiling v. Missouri Insurance Co., supra.]

In other words, a servant is a person employed by a master to perform service in his affairs, whose physical conduct in the performance of the service is controlled, or subject to the right of control, by the master. [Barnes v. Real Silk Hosiery Mills, 341 Mo. 563, 108 S. W. (2d) 58; Skidmore v. Haggard, 341 Mo. 837, 110 S. W. (2d) 726; Bass v. Kansas City Journal Post Co. (Mo.), 148 S. W. (2d) 548; Reiling v. Missouri Insurance Co., supra.] An agent, on the other hand, is one who is employed under an agreement to accomplish results on behalf of his principal whom he represents, but who, in attaining the ends for which he is employed, is not subject to his principal's right of control over the manner in which he shall perform the acts that constitute the execution of his agency. [Vert v. Metropolitan Life Ins. Co., supra; Snowwhite v. Metropolitan Life Ins. Co., supra; Reiling v. Missouri Insurance Co., supra.]

If to the relationship of principal and agent there is added the right of the principal to control the agent's physical movements with respect to the details of the performance of any part of the service for which he is engaged, then the agent becomes a servant in the doing of the things over which such right of control is reserved to the principal; and the principal becomes subject to liability for any negligence of his servant in that regard under the ordinary application of the doctrine of *respondeat superior.* [Vert v. Metropolitan Life Ins. Co., *supra*; Snowwhite v. Metropolitan Life Ins. Co., *supra*; Reiling v. Missouri Ins. Co., *supra.*] But if the relationship is such that the principal has no right to control or direct the physical movements of his agent in accomplishing the final results for which he is employed, then the agent is merely an agent and not a servant; and (save for matters with which we are not presently concerned), the principal will not be liable for physical harm or injury caused by the negligent physical conduct of his agent (who is not a servant) during the performance of the principal's business, ''unless the act was done in the manner directed or authorized by the principal or the result was one intended or authorized by the principal.'' [Kourik v. English, 340 Mo. 367, 100 S. W. (2d) 901.]

In the case at bar, plaintiff seeks to hold the insurance company answerable for Polunsky's negligence upon the theory that at the time and place of the accident he had with him the day's premium collections which he was taking to his home, in obedience to an alleged direction of the company to that effect, to be retained by him until the following morning at eight o'clock, when he would turn the money over to the company.

Of course the mere fact that Polunsky had with him the day's collections would not suffice to render the insurance company responsible for his negligence in the operation of his automobile, unless it appeared, as plaintiff herself concedes, that in taking the money to his home he was engaged in the performance of a personal service for the insurance company and subject to its right of control over his physical movements while in the act of accomplishing the required result. [Pesot v. Yanda, *supra.*]

In attempting to support the idea that Polunsky was taking the money to his home in obedience to a specific direction of the insurance company, plaintiff relies almost entirely upon a single question and answer which appears in the course of the testimony of one Stillman, the superintendent of the insurance company, who was put upon the stand as one of plaintiff's witnesses.

Earlier in his examination Stillman had testified that according to the settled practice of the company, which was in effect at the time of the injury to plaintiff, ''a man makes his collections for the day and turns them in the next morning.'' It was also shown that the office out of which Polunsky worked customarily closed at five o'clock

each afternoon, so that in any event the company would have had no place open for the receipt of collections made after five o'clock, as was the case with the last collection made by Polunsky on the day in question, which was made about seven-thirty o'clock. Then appears the following question and answer, which plaintiff extracts from the whole evidence in the case as purportedly establishing a basis for her contention that in taking the money to his home, Polunsky was embarked upon a physical errand for the company so as to have imposed liability upon it for injury inflicted through his negligent operation of his automobiles:

"Q. I will ask you this: if when you inducted or broke in or educated a new agent to a territory, if you or anyone in position of authority, advised the agent that under those circumstances; namely, if a collection was made after the hour of closing of the office, that he would take the collection home and report it the next morning to the office? A. Yes, sir."

While we appreciate that in ruling the demurrer to the evidence, plaintiff is to be accorded the benefit of all fair and reasonable inferences in her favor, she is not entitled to the benefit of forced and violent inferences which could only be drawn by isolating a particular portion of the evidence from its context, and by attributing a meaning to it contrary to what all the other of her own evidence shows to have been the actual fact. [Bushman v. Barlow, 316 Mo. 916, 939, 292 S. W. 1039, 1049.]

Reading the particular question and answer relied upon by plaintiff in the light of all of plaintiff's evidence upon the point, what was obviously meant was that the agent was expected to "take the collection home," that is, be responsible for it over night, and render his accounting to the company at eight o'clock on the following morning, to which end Polunsky at least was under bond for the faithful performance of his duty. There is no suggestion that the agent was required to go directly home upon quitting his debit for the day, or that he was required to turn over the very money he had collected, but on the contrary the evidence discloses that it sufficed, so far as the company was concerned, that he properly account on the following morning by whatever manner of remittance might happen to suit his convenience. Moreover, the evidence at most shows only that Stillman "advised" each agent, that is, suggested or recommended to him, that he take the money home, which is quite a different thing from saying that he issued a positive order or direction to that precise effect so as to have constituted the agent's trip to his home a physical errand for the company, subject to the company's right of control over his physical movements while proceeding in his way.

Indeed the fact is, so far as the evidence discloses, that the requirement of the insurance company that Polunsky retain possession of, or be responsible for, each day's collections over night related only

to his handling of the money in a fiduciary capacity as an agent of the company who was subject, in the execution of his agency, to the fiduciary obligation of obedience to the wishes of his principal, and in no sense involved a reservation to the company of the right to direct and control his physical movements while engaged in no other duty to the company than the mere observance of such fiduciary obligation. Absent evidence of such a reservation to the company of the right to direct and control his physical movements while taking the money to his home or while making whatever other disposition of it might have seemed to him to be advisable, his status while so engaged is to be regarded as merely that of an agent as distinguished from a servant (Reiling v. Missouri Insurance Co., supra), in view of which the company is not to be held responsible for his negligence in striking and injuring plaintiff, unless his tortious act had been done in a manner directed or authorized by the company, which there was no evidence to show. [Kourik v. English, supra.]

In the trial of the case, must stress was laid upon the fact that the automobile which Polunsky was driving at the time he struck and injured plaintiff was one which he used more or less regularly, with the company's knowledge, in connection with his work. This fact, however, is of no consequence upon the question of the company's liability, unless there had been evidence to show that the company had either expressly or impliedly directed Polunsky to use the automobile in taking the money to his home, or had reserved the right to control the manner in which he should execute that feature of his agency. [Riggs v. Higgins, 341 Mo. 1, 106 S. W. (2d) 1.]

No case having been made for the imposition of liability upon the insurance company, the court should have given a peremptory instruction in its favor at the close of the entire case.

It follows that the judgment rendered by the circuit court should be reversed as to defendant National Life and Accident Insurance Company of Nashville, Tennessee; and the commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed as to defendant National Life and Accident Insurance Company of Nashville, Tennessee. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.