# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 07-3478
_____

Michael Littleton; Gerri Littleton,

        Plaintiffs/Appellees,

  v.

Brandon McNeely,

        Defendant/Appellant,

_____

Brandon McNeely,

        Third Party
        Plaintiff/Appellant,

  v.

Robert Smedley,

        Third Party
        Defendant/Appellee,

Lisa A. Smedley,

        Third Party Defendant.

Appeal from the United States
District Court for the
Western District of Missouri.

_____

Submitted: October 15, 2008
Filed: April 9, 2009

_____

Before RILEY, BOWMAN, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

This case arises from the collision of two boats on the Lake of the Ozarks on June 19, 2005. One boat was driven and occupied by Brandon McNeely (McNeely). The other boat was owned by Robert Smedley and occupied by Robert Smedley, Michael Littleton, and their wives, Lisa Smedley and Gerri Littleton.

A jury found McNeely 45% at fault for the collision and Michael Littleton, who had been driving Robert Smedley's boat moments before the collision, 55% at fault. McNeely appeals, arguing the district court erred by (1) denying his motion for judgment as a matter of law on his contribution claim against Robert Smedley, (2) limiting discovery and excluding photographs at trial, (3) allowing a false closing argument, (4) refusing a jury instruction, (5) barring evidence of violation of a statute, and (6) precluding expert testimony. We affirm in part and reverse in part.

## I.     BACKGROUND

The Smedleys and Littletons arrived at the Lake of the Ozarks on Friday, June 17, 2005, for a three-day weekend. Robert Smedley brought his 19-1/2 foot 1993 Crownline boat. On the afternoon of Sunday, June 19, 2005, the group shopped and ate lunch, then got on the boat around 3:00 or 4:00 p.m. They proceeded to a cove, where Robert Smedley drank beer. Michael Littleton also consumed three or four beers. At the cove, the Smedleys discussed their marriage. Lisa Smedley had filed

-2-

for divorce before the trip, and Robert Smedley was hoping to reconcile. Meanwhile, the Littletons swam nearby. During their discussion, Lisa Smedley told Robert Smedley she intended to go through with the divorce. Robert Smedley became distraught and emotional.

The group went to the Salty Dog restaurant around 8:00 or 8:30 p.m. Michael Littleton drove the boat to the restaurant. Smedley drank another beer or two at the Salty Dog. The Littletons both testified Gerri Littleton did not consume any alcohol that day. Michael Littleton did not consume alcohol at dinner. Upon leaving the Salty Dog, Robert Smedley asked Michael Littleton to drive the boat because Robert Smedley was distraught and had consumed alcohol. Michael Littleton agreed to drive the boat. The group intended to return to the Tan-Tar-A Resort where they were staying. It was dark outside. As they left the restaurant, Robert Smedley testified he placed the pole light in the back of the boat and told Michael Littleton how to turn on the lights. Michael Littleton drove the boat, controlling the speed and route of the boat, and Robert Smedley did not provide any further direction or assistance in driving the boat after Michael Littleton backed the boat out of the slip. The Smedleys rode in the back seat, arguing.

About twenty minutes after leaving the Salty Dog, Michael Littleton stopped the boat because he was lost. As the Littletons and Smedleys were attempting to determine their location, the boat was struck by a 26 foot Formula Thunderbird boat operated by 20-year-old McNeely. The Littletons and Smedleys testified they did not see McNeely's boat before it struck them. McNeely told a water patrol officer on the scene he was driving his boat and suddenly heard a "huge thud." McNeely testified he did not see Robert Smedley's boat before he hit it, and he did not see any lights on Robert Smedley's boat. When McNeely turned around, he saw Robert Smedley's boat was capsizing and heard a woman screaming for help. McNeely called 911 and helped get the Littletons and Smedleys out of the water. At the time of the collision, McNeely testified he was going around 20 miles per hour. When the two boats

-3-

collided, the Littletons and Smedleys claim no one was in the driver's seat of Robert Smedley's boat and no one was near the controls. The Littletons and Smedleys were injured.

The Littletons sued McNeely in Missouri state court. McNeely removed the case to federal court based on diversity jurisdiction, asserting counterclaims for contribution against the Littletons and a third party complaint against Smedley for the imputed negligence of Michael Littleton.[1] The jury determined Michael Littleton was 55% at fault, McNeely was 45% at fault, Gerri Littleton was 0% at fault, and Robert Smedley was 0% at fault. The district court did not instruct the jury to make a finding whether Michael Littleton's negligence should be imputed to Robert Smedley.

## II.    DISCUSSION
### A.    Imputed Negligence

The parties agree Missouri law governs this diversity action. See General Elec. Capital Corp. v. Union Planters Bank, N.A., 409 F.3d 1049, 1053 (8th Cir. 2005). We review de novo the district court's interpretation of Missouri law. Id. In resolving substantive issues of state law, we are bound by the decisions of the Missouri Supreme Court. See Bass v. Gen. Motors Corp., 150 F.3d 842, 846-47 (8th Cir. 1998).

McNeely argues Michael Littleton's negligence should be imputed to Robert Smedley because Robert Smedley owned the boat, was a passenger at the time of the collision, and had a right to control the boat at the time of the collision. Robert Smedley claims there were factual disputes regarding whether Robert Smedley was in a joint venture with Michael Littleton at the time of the collision. Because McNeely failed to submit a jury instruction on joint venture, Robert Smedley argues McNeely waived the argument Michael Littleton's negligence should be imputed to

_____

[1]Lisa Smedley was granted summary judgment because she had no ownership interest in the boat.

Robert Smedley. McNeely asserts he was not required to submit a joint venture instruction, or any instruction at all, because Robert Smedley's ownership and presumed right to control the boat makes Robert Smedley liable for Michael Littleton's negligence as a matter of law.

In his third party complaint, McNeely asserted Robert Smedley was responsible for Michael Littleton's negligence under theories of joint venture and captain of the ship, and alleged Robert Smedley owned the boat and "the fault [of Michael Littleton] is imputed." McNeely submitted a jury instruction on the captain of the ship theory, but McNeely did not propose a joint venture instruction.[2] Because McNeely did not propose a jury instruction on joint venture or any other theory of imputed liability, McNeely waived his right to submit the matter to the jury, unless we determine the district court's refusal to instruct the jury on imputed liability was plain error. See Slidell, Inc. v. Millennium Inorganic Chems., Inc., 460 F.3d 1047, 1056 (8th Cir. 2006) (explaining failure to propose a jury instruction results in plain error review); see also Whitted v. Healthline Mgmt., Inc., 90 S.W.3d 470, 479 (Mo. Ct. App. 2002) (declaring failure to submit an instruction waives any point of error a party may have regarding that claim). However, McNeely did move for judgment as a matter of law on the issue of imputed liability. The district court denied McNeely's motion. Thus, the question before this court is whether the district court erroneously denied McNeely's motion for judgment as a matter of law.

In ruling on a motion for judgment as a matter of law, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or

---

[2]The district court did not submit McNeely's captain of the ship instruction because the court determined that the instruction was based on federal admiralty law, and the Lake of the Ozarks was not a navigable waterway. See Three Buoys Houseboat Vacations U.S.A., Ltd. v. Morts, 921 F.2d 775, 779 (8th Cir. 1990). Thus, the jury received no instruction, under any theory, for imputing Michael Littleton's negligence to Robert Smedley.

whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The court should grant judgment as a matter of law "only when all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.'" Smith v. World Ins. Co., 38 F.3d 1456, 1460 (8th Cir. 1994) (quoting White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992)).

The district court denied McNeely's motion for judgment as a matter of law because it determined there was a factual dispute as to whether Robert Smedley had equal control of the boat at the time of the collision. This determination was erroneous. Under Missouri law, the critical inquiry is not whether Robert Smedley *actually* had equal control of the boat at the time of the collision, but whether Robert Smedley had a *right* of control and whether an agency relationship existed between Robert Smedley and Michael Littleton. Recently, the Missouri Supreme Court addressed the circumstances under which a driver's negligence can be imputed to an owner-passenger of a vehicle. See Bach v. Winfield-Foley Fire Prot. Dist., 257 S.W. 3d 605, 606 (Mo. 2008) (en banc). In Bach, Nephew used Aunt's car to drive her to a widows' meeting. Id. at 607. Aunt asked Nephew to drive her car because Aunt did not know how to drive and had no license. Id. Nephew rear-ended a fire truck, which was parked partially in his lane attending to another accident, and Aunt was injured. Id.

Aunt sued Nephew and the Winfield-Foley Fire Protection District (Fire District), arguing the Fire District failed to exercise adequate care by parking the fire truck in a lane of traffic, and failed to warn of the blocked roadway. Id. The Fire District argued Aunt, as the owner of the car, was responsible for Nephew's contributory fault as if it were her own because Aunt and Nephew were engaged in a joint venture or joint journey at the time of the collision. Id. The jury instructions given by the district court did not ask the jury to determine *whether* Nephew was acting as Aunt's agent or *whether* a joint enterprise existed. Instead, the district court

determined Nephew's fault was attributable to Aunt as a matter of law, instructing the jury "that in assessing any percentage of fault against Aunt, *Nephew's fault should be attributed to her*." Id. at n.4. (emphasis added). The jury found Aunt suffered $100,000 in damages, apportioning 15% fault to the Fire District and 85% fault to Aunt. Id.

On appeal, Aunt argued Nephew's negligence should not have been imputed to her because, even though she owned the automobile, she had no right to control the automobile as she did not know how to drive. Id. at 607-08. The Missouri Supreme Court disagreed. The court declared the issue to be resolved was whether a principal/agent relationship existed between Aunt and Nephew, explaining agency is a fiduciary relationship where the agent consents to act on behalf of the principal and subject to the principal's control. Id. at 608. In an agency relationship, "the principal only has the right to control the ends of the agent's activities; the principal does not have the right to control or direct the physical movements of [his] agent in accomplishing the final result." Id. (citing Douglas v. Nat'l Life & Accident Ins. Co. of Nashville, Tenn., 155 S.W.2d 267, 271 (Mo. 1941)). No formal contract or appointment is necessary to create an agency relationship. Id. Instead, an agency relationship may be a "wholly gratuitous undertaking," and "consent may be manifested and the relationship may be created by words and conduct . . . even if the parties did not intend to create the legal relationship or to subject themselves to the liabilities that the law imposes as a result." Id. (citations omitted).

The Bach court further explained, so long as the agent is acting with actual authority, a principal is responsible for his agent's acts. Id. (citing Lynch v. Helm Plumbing and Elec. Contractors, Inc., 108 S.W.3d 657, 660 (Mo. Ct. App. 2002)). "Specifically, when a person operates an automobile of another while the owner is a passenger, acquiescing in the operation, there is a presumption that the driver is the agent of the owner and within the scope of his agency." Id. (citing Perricone v. DeBlaze, 655 S.W.2d 724, 725 (Mo. Ct. App. 1983)). "[T]he principal must have a

'right to control' the agent." Id. (citing Gardner v. Simmons, 370 S.W.2d 359, 362 (Mo. 1963)).

The Bach court rejected Aunt's argument that no agency relationship existed because she had no realistic right to control the vehicle. The court explained, "there was sufficient evidence to establish a basis for finding a principal/agent relationship to impute liability from Nephew to Aunt," because (1) Aunt was the sole owner of the vehicle, (2) Nephew was driving with Aunt's authorization, (3) Nephew had agreed to drive Aunt wherever she wanted to go, in exchange for personal use of the vehicle, and (4) Nephew was driving "at Aunt's behest and subject to her direction as to where to go." Id. at 609-10.[3]

There is no dispute Robert Smedley was the sole owner of the boat and asked Michael Littleton to drive the boat upon leaving the Salty Dog, and Michael Littleton agreed. Robert Smedley asked Michael Littleton to drive because Robert Smedley had been drinking alcohol and he was distraught and emotional. As the boat left the Salty Dog, Robert Smedley put the pole light in the back of the boat and told Michael Littleton how to turn on the lights. Robert Smedley and Michael Littleton both intended for Michael Littleton to drive the boat to the Tan-Tar-A Resort. Robert Smedley then sat in the back of the boat arguing with Lisa Smedley until Michael

---

[3]In Bach, the court distinguished Stover v. Patrick, 459 S.W.2d 393 (Mo. 1970) (per curiam), which Smedley relies upon in his brief and which the district court relied upon in denying McNeely's motion for judgment as a matter of law. Stover involved spouses who were co-owners of an automobile. Bach, 257 S.W.3d at 609. Stover reasoned joint ownership of an automobile, by itself, was insufficient to impute the negligence of a driver-spouse to a passenger-spouse. Id. (citing Stover, 459 S.W.2d at 401). The Bach court observed, "[u]nlike in Stover, Aunt and Nephew were not co-owners of the automobile," and explained Stover's holding was "limited to where there is an 'absen[ce of] evidence of other facts which establish a basis for imposing liability on the passenger-wife for acts of her driver-husband." Id. (citing Stover, 459 S.W.2d at 401).

Littleton stopped the boat because he was lost. Although Michael Littleton controlled the speed and route of the boat, and Robert Smedley did not provide any further direction or assistance in driving the boat after Michael Littleton backed it out of the slip, no evidence was presented to suggest Robert Smedley lacked the *right* to control the ends of Michael Littleton's activities. Robert Smedley presumably could have asked Michael Littleton to relinquish control of the boat at any time.

These undisputed facts are sufficient to establish, as a matter of law, that a principal/agent relationship existed between Michael Littleton and Robert Smedley. Because Michael Littleton acted with actual authority and Robert Smedley had the right to control the ends of Michael Littleton's activities, Michael Littleton's liability is imputed to Robert Smedley as a matter of law.[4] We therefore reverse the district court's denial of McNeely's motion for judgment as a matter of law.

---

[4]Smedley argues McNeely did not explicitly plead an agency theory in his third party complaint. McNeely pled only captain of the ship and joint venture. The Fire District in Bach similarly "argued that Aunt's own negligence contributed to her injuries, as she and Nephew were engaged in a joint venture or joint journey at the time of the accident." Bach, 257 S.W. 3d at 607. The court recognized "[t]he District misclassifie[d] Aunt and Nephew's relationship as a joint venture," and the joint venture "doctrine [was] inappropriate because there was no community of pecuniary interest between Aunt and Nephew in this journey." Id. at n.3 (citing Manley v. Horton, 414 S.W.2d 254, 260 (Mo. 1967)). Despite the Fire District's apparent failure to plead an agency theory, the Bach court held Nephew's liability was imputed to Aunt. Id. at 609. At least one other Missouri case notes, although the term "joint venture" usually arises "in a commercial or business trip context . . . misnomer of the legal relationship between [the] plaintiff and her driver did not constitute reversible error" under the circumstances of the case. Perricone, 655 S.W.2d at 725-26.

### B. McNeely's Motion for a New Trial

### 1. Alleged Party Cove Evidence

McNeely claims the district court erred by excluding from evidence certain photos salvaged from a camera in Robert Smedley's boat which McNeely claims depict the Smedleys and Littletons drinking at Party Cove, an area Michael Littleton's counsel described as notorious for drinking alcohol, nudity, "debauchery and craziness." The Littletons and Smedleys deny being at Party Cove on the day of the collision. Gerri Littleton denies drinking any alcohol on the day of the collision. McNeely also objects to the district court's ruling prohibiting him from mentioning the phrase "Party Cove" at trial because the district court found the term "Party Cove" would be highly prejudicial and of no probative value. McNeely moved for a new trial on these issues.

"'We review the denial of a motion for a new trial for a clear abuse of discretion.'" Harrison v. Purdy Bros. Trucking Co., 312 F.3d 346, 351 (8th Cir. 2002) (quoting Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 495 (8th Cir. 2002)). The district court's evidentiary rulings are also reviewed for clear abuse of discretion. See United States v. Pirani, 406 F.3d 543, 555 (8th Cir. 2005) (en banc) (citing United States v. Montano-Gudino, 309 F.3d 501, 505 (8th Cir. 2002)). We will not reverse based on erroneous evidentiary rulings "absent a showing that the ruling had a substantial influence on the jury's verdict." Harris v. Chand, 506 F.3d 1135, 1139 (8th Cir. 2007) (citing McPheeters v. Black & Veatch Corp., 427 F.3d 1095, 1101 (8th Cir. 2005)). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

McNeely contends the alleged Party Cove photos should have been admitted into evidence because, contrary to Gerri Littleton's testimony she drank no alcohol on the day of the collision, some of the photos show Gerri Littleton drinking alcohol on

the day of the collision. We disagree. The photos do not depict anyone actually drinking anything, and it is unclear whether the photos even depict Gerri Littleton holding an alcoholic beverage. Several of the photos show a woman holding a bottle covered in a green holder, and another photo shows a different woman holding a bottle largely obscured by her hand. The court assumes the women in these photos are Gerri Littleton and Lisa Smedley, but McNeely has not identified for this court which woman is Gerri Littleton and which is Lisa Smedley. The photos do not reveal whether the bottles contain alcoholic or non-alcoholic beverages. Even if the photos did show Gerri Littleton drinking alcohol, we fail to see how that fact would have had any significant impact on the verdict. McNeely never claimed Gerri Littleton was the operator of the boat or that her alleged alcohol consumption contributed to the collision in any way.

Further, there is no date stamp on the photos, and McNeely offered no evidence to establish whether the photos were taken on the day of the collision or another day that weekend. It is also unclear whether the photos were taken at Party Cove or some other location on the water. The photos do, however, provide a potentially prejudicial depiction of two women, presumably Gerri Littleton and Lisa Smedley, on a boat with their bikini tops off. The photos also contain other images of unknown women with their tops off. It is readily apparent jurors might consider such conduct lewd, offensive, or immoral. If these photos had any probative value at all—and we see none—the district court certainly did not abuse its discretion by determining any minor probative value was far outweighed by the potential for prejudice resulting from the jury's disapproval of the photos.[5]

---

[5]McNeely also claims the district court erred by "limiting discovery" of the alleged Party Cove photos. It is unclear what error McNeely claims in the discovery of the photos. Because McNeely's counsel was allowed to view the photos and the district court reopened discovery to allow McNeely to depose the Smedleys to determine whether they could identify the people in the photographs, we see no error in the district court's discovery ruling.

The district court also did not err by prohibiting McNeely from using the phrase "Party Cove" at trial. The only alleged operator of Robert Smedley's boat, Michael Littleton, admitted going to a cove and drinking alcohol on the day of the collision. Whether Michael Littleton drank alcohol at Party Cove or some other place has no bearing on his negligence or percentage of fault. The collision did not occur at Party Cove, and it occurred many hours after McNeely claims the Littletons and Smedleys visited Party Cove. In our view, the only purpose of mentioning the phrase "Party Cove" would be to suggest to the jury the Littletons and Smedleys were engaged in offensive or immoral conduct sometime that weekend. Because the location where Michael Littleton's drinking occurred was at best a tangential issue, the district court did not abuse its considerable discretion by determining the minor relevance, if any, of Party Cove was far outweighed by the prejudicial inferences carried by the phrase.

### 2. Closing Argument

McNeely next argues the district court erred by allowing Gerri Littleton's counsel to argue in closing argument that Gerri Littleton was tested for alcohol at the hospital and her medical records reflected no ethyl alcohol in Gerri Littleton's blood. In his closing argument, McNeely's counsel argued, "[Y]ou folks have the medical records. You can take a look at them if you have any doubt. There's no report there at all that says she had nothing to drink. The truth is they didn't run a blood alcohol [test] on her." Gerri Littleton's counsel countered in his own closing argument that Gerri Littleton's "medical records . . . [do not] say a word about ethyl alcohol. If you have ethyl alcohol, it pops up on the printout, ethyl alcohol." Gerri Littleton's counsel based his statements on a hospital printout of Gerri Littleton's blood tests that contained no mention of ethyl alcohol. On the other hand, Michael Littleton's hospital printout, which followed the same format, contained a notation of .111 blood alcohol content.

"[W]hen a new trial motion is based on improper closing arguments, a new trial should be granted only if the statements are 'plainly unwarranted and clearly

-12-

injurious' and 'cause prejudice to the opposing party and unfairly influence a jury's verdict.'" Harrison, 312 F.3d at 351 (quoting Alholm v. Am. Steamship Co., 144 F.3d 1172, 1181 (8th Cir. 1998)) (alterations omitted).  After comparing Gerri Littleton's printout to Michael Littleton's printout, the district court found it was a reasonable inference that the same blood test had been administered and Michael Littleton's showed .111 ethyl alcohol because alcohol was present in his bloodstream.  The district court further found it was reasonable to infer the absence of an ethyl alcohol notation meant Gerri Littleton's blood was tested, and there was no alcohol present in her blood.  We agree more than one reasonable inference can be drawn from Gerri Littleton's medical records.  McNeely apparently never produced a witness to testify which tests were actually given to Gerri Littleton.  Furthermore, Gerri Littleton's blood alcohol content was of such minimal significance to the litigation that any alleged error was harmless, and certainly was not so prejudicial and injurious as to influence unfairly the jury's verdict.  The district court did not abuse its discretion by permitting Gerri Littleton's counsel to argue Gerri Littleton's medical records reflected no ethyl alcohol in her bloodstream.

### 3.     Refusal of McNeely's Intoxication Instruction

McNeely also contends he is entitled to a new trial because the district court refused to give one of McNeely's proposed instructions, which read: "Plaintiff Michael Littleton drove while intoxicated to the extent that his driving ability was impaired."  See M.A.I. 17.21.  McNeely did not specifically object to the district court's refusal to give his proposed intoxication instruction.[6]  We normally review jury instructions for abuse of discretion, determining "'whether the instructions fairly

---

[6]McNeely "object[ed] to instruction 13 because it fails to submit the issue to the jury with regard to fault on the part of Michael Littleton for failing to maintain proper control of the boat to avoid the collision and for driving under the influence of alcohol."  Objecting to the intoxication issue in a different instruction is not the same as asking the district court to give another specific instruction.  In any event, our conclusion would be the same under an abuse of discretion review.

-13-

and adequately submitted the issues to the jury.'" Crump v. Versa Prods., Inc., 400 F.3d 1104, 1107 (8th Cir. 2005) (quoting Bennett v. Hidden Valley Golf and Ski, Inc., 318 F.3d 868, 873 (8th Cir. 2003)). However, "[a] party's failure to object to jury instructions results in a waiver of that objection, absent a showing of plain error." Niemiec v. Union Pac. R.R. Co., 449 F.3d 854, 857-58 (8th Cir. 2006).

McNeely argued throughout the trial that Michael Littleton was drunk and this was the reason Michael Littleton did not turn on the boat's headlights or keep a careful lookout. The instructions given by the district court permitted the jury to assess fault against Michael Littleton if he failed to keep a proper lookout or failed properly to display his headlights. McNeely's proposed instruction presented no link between Michael Littleton's intoxication and how his intoxication allegedly contributed to or caused the collision. Because Michael Littleton's alcohol consumption was only relevant to the issue of not keeping a proper lookout or not turning on the lights, McNeely was not necessarily entitled to a separate instruction permitting the jury to assess fault against Michael Littleton based solely on his intoxication, with no reference to how his intoxication may have caused the collision. See M.A.I. 17.21 Committee Comment (recognizing, "[t]here must be evidence to support a finding of proximate cause between defendant's intoxication and plaintiff's damages") (citing Bowman v. Heffron, 318 S.W.2d 269, 273 (Mo. 1958)). The district court did not commit error, plain or otherwise, by refusing to submit McNeely's proposed intoxication instruction.

### 4.    Evidence of Violation of a Missouri Statute

McNeely argues he is entitled to a new trial because the district court erroneously excluded evidence that Michael Littleton violated a Missouri statute. McNeely did not plead violation of a statute as the basis for his contribution claim, nor did McNeely ever specify for the district court which Missouri statute Michael Littleton allegedly violated. McNeely neither offered evidence, nor made an offer of proof at trial, that Michael Littleton violated a statute. Nowhere in his appellate brief

does McNeely cite a specific Missouri statute. We will presume, as the district court did, McNeely intends Mo. Rev. Stat. § 306.111, which prohibits driving a vessel on Missouri lakes while intoxicated.

Even if we assume this issue were properly pled, properly presented to the district court, and properly preserved for appeal, the district court did not err by determining McNeely was not allowed to present evidence or instruct the jury on Michael Littleton's alleged violation of Mo. Rev. Stat. § 306.111. Michael Littleton was never arrested or charged with violating Mo. Rev. Stat. § 306.111 or any other statute. The district court allowed McNeely to argue numerous times that Michael Littleton was intoxicated. The jury's finding Michael Littleton 55% at fault for the collision strongly suggests the jury indeed placed significant weight on Michael Littleton's intoxication. McNeely fails to explain how Michael Littleton's alleged statutory violation would have resulted in a more favorable verdict. In our view, allowing McNeely to argue Michael Littleton was guilty beyond a reasonable doubt of criminal conduct would have been cumulative to the intoxication evidence already presented and also potentially would confuse the jury. See Fed. R. Evid. 403. We therefore conclude the district court did not err by excluding evidence of Michael Littleton's alleged violation of Mo. Rev. Stat. § 306.111.

### 5. Expert Testimony

Finally, McNeely contends he is entitled to a new trial because the district court erroneously limited the testimony of McNeely's expert, Dr. Curtis Klaassen (Dr. Klaassen). "'Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court, and these decisions will not be disturbed on appeal absent an abuse of that discretion.'" Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003) (quoting Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 296 (8th Cir. 1996)). Even if the district court's evidentiary decision were an abuse of discretion, any error "must affect a party's substantial rights to warrant a new trial." Williams v. City of Kansas City, Mo., 223 F.3d 749, 755 (8th Cir. 2000). "Error may

not be predicated upon a ruling excluding evidence unless . . . 'the substance of the evidence was made known to the court by offer [of proof] or was apparent from the context within which questions were asked.'" <u>Strong v. Mercantile Trust Co.</u>, 816 F.2d 429, 431 (8th Cir. 1987) (quoting Fed. R. Evid. 103(a)(2)).

McNeely claims Dr. Klaassen should have been allowed to testify "on the exponential effects of alcohol consumption and . . . as to standards in other jurisdictions with regard to appropriate levels of blood alcohol." McNeely made no offer of proof at trial as to what the substance of Dr. Klaassen's testimony would have been on these issues. We therefore conclude McNeely failed to preserve the alleged error for appeal.[7] <u>See</u> <u>id.</u>

## III.   CONCLUSION

We reverse the district court's denial of McNeely's motion for judgment as a matter of law on McNeely's contribution claim against Robert Smedley, and affirm the district court on all other issues.

_____

---

[7]Even on appeal, McNeely fails to inform the court what other jurisdictions' standards Dr. Klaassen planned to discuss or what Dr. Klaassen intended to say about other jurisdictions' standards regarding "appropriate levels of blood alcohol." It is therefore impossible for this court to evaluate whether Dr. Klaassen's testimony was relevant in this case, or the degree of any relevance, much less whether McNeely's substantial rights were affected by the district court's exclusion of such testimony.